IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Betty Ann Anthony, | ) | C/A No. 3:10-3289-MBS-PJG |
|                 Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Kershaw County Medical Center, | ) | |
|                 Defendant. | ) | |

The plaintiff, Betty Ann Anthony ("Anthony"), filed this action asserting violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.; and state law contract claims against her former employer, KershawHealth.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion to dismiss and for summary judgment. (ECF No. 20.) Anthony filed a response in opposition (ECF No. 24), and the defendant filed a reply (ECF No. 29). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Anthony, to the extent they find support in the record. Anthony, an African American female in her fifties, worked for KershawHealth as a nurse for approximately ten years. She served as a Licensed

---

[1] The parties appear to agree that the defendant should be identified as KershawHealth rather than by its prior name, Kershaw County Medical Center.

Practical Nurse ("LPN") in medical surgical nursing for the majority of her tenure at KershawHealth, then obtained her Registered Nurse ("RN") license in February of 2009. She received excellent performance reviews throughout her time at KershawHealth.

In March of 2009 Anthony, who had perceived unequal treatment of African American nurses by KershawHealth, complained to Donnie Weeks, KershawHealth's president, that more Caucasian nurses were being hired than African American ones. At some point after she met with Weeks, Anthony, who was then working on a PRN or "as needed" basis, learned that KershawHealth was planning to discontinue its PRN program. Anthony therefore decided to seek a full-time RN position with KershawHealth. Anthony spoke about this to her supervisor, Stacy Branham, who agreed that Anthony would become a full-time nurse on the Medical II floor. When a full-time position on the Medical II floor was posted in May or June of 2009, Branham offered it to Anthony ("Medical II position"). Anthony requested time to consider the offer. A few days later, Anthony learned that KershawHealth had hired another RN to fill the job. Irma Hudson, who is Caucasian, was hired from outside the KershawHealth system for the position.

In June of 2009 Anthony applied for another full-time RN position at KershawHealth's Elgin Urgent Care ("Urgent Care position").[2] The parties appear to dispute who filled the positions at Elgin Urgent Care. Anthony alleges that the positions at Elgin Urgent Care were filled by Valerie Underwood-Howze (African American), Melissa A. Allen (Caucasian), and Jhoann Pineda-Kim (Asian).[3] KershawHealth argues that Anthony misunderstood one of the charts and that the Elgin

---

[2] The parties appear to agree that there was more than one full-time RN position available at Elgin Urgent Care.

[3] In support of this allegation Anthony relies on two charts that appear to have been produced and created by the defendant. (See ECF No. 24-7.)

Urgent Care jobs were ultimately filled by Underwood-Howze and Becky Scheffer (Caucasian). Further, the defendant states that Scheffer was soon promoted to Nurse Manager.

Having been passed over for a full-time RN position, Anthony filed an administrative charge of discrimination with the Equal Employment Opportunity Commission on September 9, 2009. After filing her EEOC charge, Anthony noticed that the hours she was scheduled to work were being reduced. Accordingly, she sought and obtained employment elsewhere. She resigned from KershawHealth effective December 13, 2009.

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

PJG

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.  Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

PJG

C.  **Eleventh Amendment Immunity**

KershawHealth correctly asserts that Anthony's ADEA claim must be dismissed because KershawHealth, as an arm of the state, is immune from suit regarding this claim. See Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91 (2000). Anthony has not refuted any of KershawHealth's evidence that it is an arm of the State of South Carolina, and in fact did not address this argument at all in her opposition memorandum. Similarly, her state breach of contract claim cannot proceed against KershawHealth in this court. Because the sole evidence in the record indicates that KershawHealth is entitled to Eleventh Amendment immunity on Anthony's ADEA and state breach of contract claim, these claims should be dismissed.

D.  **Title VII Claim of Disparate Treatment**

To establish a *prima facie* case of race discrimination based on a failure to hire or promote, a plaintiff must show: (1) she is a member of a protected class; (2) she applied for the position at issue; (3) she was qualified for the position; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 544-45 (4th Cir. 2003).

In support of her claim of race discrimination, Anthony argues that she applied for or was considered for at least two full-time RN positions that she did not receive—the Medical II position and the Urgent Care position.[4] KershawHealth argues that Anthony cannot demonstrate that she was rejected from either position under circumstances that gave rise to an inference of unlawful

---

[4] Anthony appears to have abandoned her allegation that she was also not selected for a full-time RN position in September 2008. However, even if Anthony were pursuing this allegation, as argued by KershawHealth, Anthony cannot demonstrate that she was qualified for the position as she did not earn her RN license until February 2009.

PJG

discrimination.⁵ KershawHealth points out that the evidence demonstrates that Branham initially offered the Medical II position to Anthony. Further, even though the parties dispute who ultimately received the Urgent Care positions, they agree that at least one of the positions was filled by an African American.

With regard to the Medical II position, taking the evidence in the light most favorable to Anthony, the court finds that for the purposes of summary judgment Anthony has arguably satisfied the requirements to establish a *prima facie* case of race discrimination. The parties do not dispute that several days after Anthony was offered the position, but before she had accepted it, Hudson, who is Caucasian, received the position. Although the fact that Anthony was offered the position appears to undermine an argument that she was rejected under circumstances giving rise to an inference of unlawful discrimination, for the purposes of summary judgment the court assumes that Anthony has satisfied the fourth prong by showing that the position was filled by someone outside the protected class. See, e.g., Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994) (holding that a plaintiff may establish the fourth prong of a *prima facie* case of discrimination by showing that the position was filled by someone outside the protected class). However, Anthony has failed to make such a showing with regard to the Urgent Care position. Although the parties agree that at least one of the positions was filled by a Caucasian female, they also agree that one of the positions was filled by an African American female. In light of this uncontroverted evidence and absent any additional

---

⁵ KershawHealth also argues that Anthony cannot demonstrate that she applied for the Medical II position. However, taking the evidence in the light most favorable to Anthony, her supervisor offered this position to her and Anthony requested time to consider it, therefore the court will focus on the final prong of the *prima facie* case, which is at issue for both positions.

PJG

evidence,[6] Anthony cannot show that she was rejected for the Urgent Care position under circumstances that gave rise to an inference of unlawful discrimination.

Even assuming Anthony can establish a *prima facie* case as to the Medical II position, Anthony has not presented sufficient evidence from which a reasonable jury could find that KershawHealth's stated reason for failing to promote or hire her for the Medical II position was pretextual. KershawHealth asserts that it hired Hudson for the Medical II position because she had much more experience than Anthony as an RN. Specifically, at the time of hire Hudson had been an RN for over 35 years, while Anthony had been an RN for only a few months. (Nettles Aff. ¶ 5.a., ECF No. 20-5 at 2.) Anthony argues that she was as qualified, if not more so, than Hudson for the position because (1) she had worked for the defendant for nine years, (2) she was working as an RN on an as needed basis on the Medical II floor and therefore was already familiar with the job, the policies, and the procedures, and (3) the defendant failed to demonstrate that she was not meeting the defendant's expectations in performing her RN duties. Although Anthony had worked for the defendant for nine years, she had only worked as an RN for four months at the time that Hudson was hired. Prior to that she was employed as an LPN. Anthony agreed that RNs when compared to LPNs had more training and knowledge and testified that an LPN "cannot do certain procedures such as hang blood, push IV medications, certain peripheral IV lines they can't insert or whatever" and

---

[6] To the extent that Anthony alleges that KershawHealth hired an African American for one of the positions because Anthony had filed a charge of discrimination with the EEOC, the unrefuted evidence demonstrates that this individual was hired before Anthony filed her charge. (Compare ECF No. 24-7 at 5 with ECF No. 24-5.) Additionally, Anthony's argument that a chart indicating that only six of the forty-three full-time RN nurses who were hired during the relevant time period were African American and no African Americans received a position transfer shows a pattern of discrimination is unavailing. See Carter v. Ball, 33 F.3d 450, 456 (4th Cir. 1994) ("The mere absence of minority employees in upper-level positions does not suffice to prove a *prima facie* case of discrimination without a comparison to the relevant labor pool.").

that there are "certain medications a LPN cannot deal with or handle." (Pl.'s Dep. 18-19, ECF No. 20-3 at 7.) While Anthony may disagree with the reason offered by KershawHealth for failing to ultimately hire her for the Medical II position, she cannot show on this recored that KershawHealth's reason was untrue. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005) (holding that a Title VII plaintiff "cannot establish her own criteria for judging her qualifications for the promotion" but "must compete for the promotion based on the qualifications established by her employer"); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (emphasizing that a plaintiff's own self-interested assessment of his qualifications for a particular position is irrelevant and that it is the decisionmaker's assessment that matters); EEOC v. Fed. Reserve Bank of Richmond, 698 F.2d 633, 671-72 (4th Cir. 1983) (holding that an employer has the right to establish the qualifications that are "necessary or preferred" for a position and the plaintiff must show not only that he meets these qualifications to establish a *prima facie* case but also that he is superior to the selected candidate to establish pretext), rev'd in part on other grounds sub nom. Cooper v. Fed. Reserve Bank of Richmond, 464 U.S. 932 (1983); see also Reeves, 530 U.S. at 148 ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."). On this record, no reasonable jury could find that KershawHealth's reason was pretextual and that Anthony was the victim of intentional discrimination. Merritt, 601 F.3d at 294-95.



E.  **Title VII Claim of Retaliation**

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). In a typical retaliation case, a plaintiff must show that: "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland, 487 F.3d at 218. To satisfy the second element, a plaintiff must show that a reasonable employee would have found the challenged action "materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks & citations omitted). KershawHealth challenges Anthony's ability to show that any adverse action was causally connected to protected activity.

To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action " '*because* the plaintiff engaged in a protected activity.' " Holland, 487 F.3d at 218 (emphasis in original) (quoting Dowe v. Total Action Against Poverty in Roanoake Valley, 145 F.3d 653, 657 (4th Cir. 1998)). Thus, to demonstrate causation, a plaintiff must show that the employer was aware of the protected activity. See Shield v. Fed. Express Corp., 120 F. App'x 956, 962 (4th Cir. 2005) (citing Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004)). In certain circumstances, temporal proximity between the protected activity and the adverse action can be probative of a causal connection. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and holding a twenty-month period to be insufficient);

PJG

Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."); Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229 (4th Cir. 2006) (unpublished) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment). Further, "[i]n cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.' " Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

In her Complaint and during her deposition, Anthony alleges that as a result of her complaint to Weeks in March 2009[7] and the filing of her EEOC charge in September 2009, KershawHealth retaliated against her by reducing her working hours. KershawHealth argues that Anthony cannot establish a *prima facie* case because she cannot establish a causal connection between her protected activity and the alleged reduction in hours. Although in her deposition Anthony alleged that her supervisors reduced her hours, she was unable to identify any specific supervisor by name. (Anthony Dep. 115-116, ECF No. 20-3 at 58-59.) She has not demonstrated that these supervisors, or any decision maker, were even aware that she had engaged in any protected activity. See Holland, 487 F.3d at 218 (stating that to prove causal connection, the first thing the plaintiff must be able to prove

---

[7] KershawHealth argues that to the extent that Anthony claims that the defendant retaliated against her based on her complaint to Weeks, such a claim fails because Anthony did not specifically state in her deposition that this action supports her claim of retaliation. In light of the assertions in Anthony's Complaint and her discussions in her deposition concerning her meeting with Weeks, the court is addressing this claim on the merits.

is the decision maker's knowledge that the plaintiff engaged in a protected activity). With regard to her allegations that KershawHealth retaliated against her for filing a charge with the EEOC, Anthony has provided no support for her general allegation in her response in opposition to summary judgment that the defendant was notified of the charge prior to December 13, 2009. (Cf. Anthony Dep. 115-16, ECF No. 20-3 at 58-59.) Furthermore, with regard to her complaint to Weeks, to the extent that Anthony is relying solely on temporal proximity, a six-month lapse is insufficient to infer causation. See Pascual, 193 F. App'x 229. Additionally, Anthony has not alleged that Weeks reduced her hours, that Weeks directed anyone to reduce her hours, or that the "supervisors" knew of her complaint and reduced her hours.

Based on the foregoing, Anthony cannot establish a *prima facie* case for retaliation based on a reduction in hours, and Anthony has failed to identify any other action taken by KershawHealth that would meet the *prima facie* case. Accordingly, KershawHealth is entitled to summary judgment on Anthony's retaliation claim.

**RECOMMENDATION**

KershawHealth is entitled to Eleventh Amendment immunity with regard to Anthony's ADEA claim and breach of contract claim and is entitled to summary judgment on Anthony's Title VII disparate treatment and retaliation claims. Therefore, the court recommends that KershawHealth's motion (ECF No. 20) be granted.

                                                                           Paige J. Gossett
                                                                           UNITED STATES MAGISTRATE JUDGE

July 2, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).