**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Betty Ann Anthony, | ) | Civil Action No. 3:10-03289-MBS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Kershaw County Medical Center, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Betty Ann Anthony ("Plaintiff") filed this action against her former employer, Kershaw County Medical Center[1] ("Defendant"), alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634. (ECF No. 1.) Plaintiff also asserts a state law claim for breach of contract. (Id.) This matter is before the court on Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and for summary judgment pursuant to Fed. R. Civ. P. 56, which motion was filed on November 18, 2011. (ECF No. 20.) Plaintiff opposes Defendant's motion asserting, that Defendant has failed to show that it is entitled to either dismissal or judgment as a matter of law on her claims. (ECF No. 24.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On July 2, 2012, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's motion in its entirety. (ECF No. 33.) Plaintiff filed objections to the Report and Recommendation asking the court to reject the Magistrate Judge's recommendation.

---

[1] Defendant states that its correct name is KershawHealth. (ECF No. 20, p. 1.)

1

(ECF No. 34.)  For the reasons set forth below, the court adopts the Report and Recommendation of the Magistrate Judge and **GRANTS** Defendant's Fed. R. Civ. P. 12(b)(1) motion to dismiss Plaintiff's age discrimination and breach of contract claims and Fed. R. Civ. P. 56 motion for summary judgment as to Plaintiff's claims for race discrimination and retaliation.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed in the Report and Recommendation.  The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate.  The court adopts this summary as its own, and will only reference facts pertinent to the analysis of Plaintiff's claims.

Plaintiff is a fifty-three year old, African-American female.  (ECF No. 24-10, p. 3.) Plaintiff started working for Defendant as a full-time, licensed practical nurse ("LPN") in pediatrics in April 1999 and she worked in that position until her departure for another job in October 1999.  (ECF No. 20-3, pp. 9-10, 22-23.)  In April 2000, Plaintiff returned to work for Defendant as an LPN in medical surgical nursing.  (ECF No. 20-3, pp. 24; ECF No. 20-4, p. 17.) Upon  returning to work for Defendant, Plaintiff chose to be designated as a PRN,[2] instead of a full-time employee, because she "had children and I wanted to work my schedule around them." (Id. at p. 24.)  In February 2009, Plaintiff obtained her registered nursing ("RN") license and, as a result, Defendant promoted Plaintiff to a PRN RN position, which promotion included an increase in pay.  (ECF No. 20-3, p. 31.)  Plaintiff worked as a PRN RN until the end of her employment with Defendant in December 2009.  (ECF No. 20-3, pp. 27, 33.)

---

[2] The term PRN is an acronym for "pro re nata," a Latin term meaning "when circumstances require" or "as needed."  Sandy Keefe, What Is a PRN Nursing Position (August 14, 2012), http://www.ehow.com/facts_5606092_prn-nursing-position_.html.  A PRN nurse is offered available shifts but is not guaranteed a set amount of work in any given pay period. Id.  She may be scheduled for several shifts in a pay period, or may have to wait to be called the day of a shift. Id.

In March 2009, Plaintiff scheduled an appointment with Donnie Weeks ("Weeks"), Defendant's President, to discuss various issues regarding her employment. (ECF No. 20-3, p. 56.) During their meeting, Plaintiff offered President Weeks her opinion that Defendant had discriminatory practices of hiring more full-time Caucasian nurses than African-American nurses and allowing Caucasian nurses to receive more beneficial patient assignments than African-American nurses.[3] (ECF No. 24-10, p. 22.) After her meeting with Weeks, Plaintiff learned that Defendant was planning to discontinue the PRN program. (ECF No. 24-10, pp. 12-13.) As a result, Plaintiff decided to seek a full-time RN position with Defendant. (Id. at p. 13.)

In June 2009, a full-time RN position became available in the Medical II unit ("Medical II position").[4] (ECF No. 20-3, p. 47.) Stacy Branham, Plaintiff's immediate supervisor, offered the Medical II position to Plaintiff, but Plaintiff did not immediately accept the job. (Id. at pp. 47-48.) A few days later, Plaintiff learned another RN, Irma Hudson ("Hudson"), had been hired by Defendant to fill the Medical II position. (Id.) Hudson, a Caucasian female in her late fifties, was hired from outside Defendant's system for the Medical II position and had been a RN since 1974. (ECF No. 20-3, p. 54; ECF No. 24-10, pp. 27-28; ECF No. 20-6, p. 2 ¶ 5(a).) Plaintiff did not agree with Defendant's decision to hire Hudson because Plaintiff believed Defendant's "Employment and Transfers" hiring policy gave internal applicants (like Plaintiff) priority consideration over external applicants. (ECF No. 24, p. 4 (citing to ECF No. 24-4, p. 3 ¶ 4).)

In June 2009, two full-time RN positions became available at Defendant's Elgin Urgent Care facility (the "Urgent Care positions"). (ECF No. 20-5, p. 2 ¶¶ 3, 4.) Plaintiff interviewed

---

[3] Plaintiff testified that she had already complained to her immediate supervisor, Stacy Branham, about the unfairness of the patient assignment procedure. (ECF No. 24-10, pp. 14-15.)

[4] Plaintiff contends that she was first wrongfully denied a full-time RN position that became available soon after she received her RN license. (ECF No. 20-3, pp. 37-39.) However, Defendant submitted uncontroverted evidence that Plaintiff was referring to the RN position that was awarded to Brook Anders in September 2008, months before Plaintiff became an RN. (See ECF No. 20-6, p. 2 ¶ 5(c).)

for these Urgent Care positions. (Id. at p. 2 ¶ 4.) The Urgent Care positions were ultimately awarded to Rebecca Scheffer and Valerie Underwood-Howze. (Id.) At the time of hire, Scheffer, a Caucasian female in her late forties, had been a RN since 1996 with several years experience in urgent care nursing and Underwood-Howze, an African-American, had been an RN since 2004. (Id. at p. 2 ¶ 5.)

On September 9, 2009, Plaintiff filed a charge of race and age discrimination (but not retaliation) with the South Carolina Human Affairs Commission ("SCHAC") and the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF No. 24-5, p. 2.) After filing her charge, Plaintiff observed Defendant was not scheduling her to work the amount of hours that she had grown accustomed to receiving. (ECF No. 20-3, pp. 57-58.) Thereafter, Plaintiff pursued and obtained employment with another employer. (ECF No. 20-3, pp. 15-16.) Plaintiff then resigned from her employment with Defendant effective December 13, 2009. (ECF No. 20-3, p. 32-33.) The EEOC issued Plaintiff a right to sue notice on September 29, 2010. (ECF No. 20-4, p. 15.)

On December 28, 2010, Plaintiff filed this action alleging age and race discrimination, retaliation, and breach of contract. (See ECF No. 1.) On January 20, 2011, Defendant answered the complaint, denying Plaintiff's allegations. (ECF No. 5.) On November 18, 2011, Defendant filed a motion to dismiss Plaintiff's causes of action for age discrimination and breach of contract pursuant to Fed. R. Civ. P. 12(b)(1) and moved for summary judgment pursuant to Fed. R. Civ. P. 56 as to Plaintiff's claims for race discrimination and retaliation. (ECF No. 20.) Plaintiff filed opposition to Defendant's motion on December 20, 2011, to which Defendant filed a reply in support of the motion on January 10, 2011. (ECF Nos. 24 & 29.)

## II.    LEGAL STANDARD AND ANALYSIS

### A.    Standard

#### 1.    Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

#### 2.    Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party.  Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121,

123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

    3.    Fed. R. Civ. P. 12(b)(1) Motions

A motion to dismiss for lack of subject matter jurisdiction filed pursuant to Fed. R. Civ. P. 12(b)(1), raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). To adjudicate claims brought before it, this court must have both a constitutional and statutory grant of authority to exercise jurisdiction over the matter in question. Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004).

4.        Establishing Claims of Discrimination/Retaliation under Title VII or the ADEA

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  The ADEA addresses age related employment issues.  29 U.S.C. § 623(a)(1).  A plaintiff can establish claims of discrimination under Title VII or the ADEA in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[5]  Pursuant to this burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).  If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253  (1981).  Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) .

Title VII and the ADEA also protect individuals from retaliation by making it unlawful for an employer to discriminate against an employee for opposing an unlawful employment

---

[5]  The McDonnell Douglas burden-shifting framework applies to claims under both Title VII and ADEA.  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004); see also Bodkin v. Town of Strasburg, 2010 WL 2640461, at *4–5 (4th Cir. June 29, 2010).

practice or because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."   42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  As with a claim for discrimination, a plaintiff may offer direct evidence of retaliation or use the McDonnell Douglas proof scheme.  Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006).

**B.    Analysis**

   1.    Plaintiff's Claim of Race Discrimination

Plaintiff alleges that Defendant unlawfully discriminated against her because of her race by failing to hire her for jobs - the Medical II position and the Urgent Care position - that were ultimately filled by individuals who were Caucasian.   To prove a prima facie case of discrimination for failure to promote under Title VII, a plaintiff must prove that (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

Upon her review, the Magistrate Judge found that Plaintiff established a prima facie case of discrimination in regards to the Medical II position, but not the Urgent Care position.  (ECF No. 33, p. 7.)   The Magistrate Judge then concluded that Defendant met its burden under McDonnell Douglas to produce evidence from which a jury could conclude that Defendant had a legitimate, nondiscriminatory reason for not selecting Plaintiff.  (Id. at p. 8.)  After reviewing the record in its entirety, the Magistrate Judge found that Plaintiff could not demonstrate a genuine issue of material fact as to whether Defendant's proffered reason for failing to select Plaintiff was merely a pretext for discrimination.  (Id.)  In this regard, the Magistrate Judge specifically identified Plaintiff's inability to overcome Defendant's stated reason that Irma Hudson was hired

over Plaintiff for the Medical II position because Hudson had 35 years of experience as an RN when Plaintiff had only been an RN for a few months. (Id.) Therefore, the Magistrate Judge recommended granting Defendant's motion for summary judgment on Plaintiff's race discrimination claim. (Id. at p. 9.)

Plaintiff objects to the Magistrate Judge's recommendation, asserting that the Magistrate Judge mischaracterized the facts surrounding the initial offer of the Medical II position to Plaintiff in a way that "undermines Ms. Anthony's argument that Defendant discriminated against Ms. Anthony on the basis of her race." (ECF No. 34, p. 4.) Plaintiff further contends that the Magistrate Judge placed great importance in the recommendation on the proposition that "a Title VII plaintiff cannot establish her own criteria for judging her qualifications but must compete based on the qualifications established by her employer," but did not hold Defendant accountable for deviating from the proposition and its own policy based on its hiring of Hudson to the Medical II position.[6] (Id. at p. 6.) As a result, Plaintiff argues that she has shown that there is sufficient evidence for a rational fact finder to find that Defendant was motivated by discriminatory reasons. (Id.) Therefore, Plaintiff urges the court to not adopt the Magistrate Judge's recommendation.

To survive Defendant's motion for summary judgment, Plaintiff has to come forward with sufficient evidence to demonstrate that the legitimate reason offered by Defendant was not its true reason, but was a pretext for discrimination. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Anderson v. Ziehm Imaging, Inc., C/A No. 7:09-02574-JMC, 2011 WL 1374794, at *5 (D.S.C. Apr. 12, 2011) (citing Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000)). "The ultimate

---

[6] It is noted that Plaintiff failed to object to the Magistrate Judge's finding that Plaintiff did not establish a prima facie case of discrimination regarding the Urgent Care position.

question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct . . . [i]t is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000)) (internal citations omitted).  Rather, Plaintiff must demonstrate that a reasonable jury could "believe [her] explanation of intentional  race discrimination."  Id.

Upon the court's review, there is insufficient evidence to support a finding that Defendant's decision to select Hudson over Plaintiff for the Medical II position was motivated by the race of the two individuals.  The court finds Plaintiff's evidence as highlighted in her objections to the Magistrate Judge's Report and Recommendation does not rise to the level necessary to establish that her race actually played a role in the decision-making process and had a determinative influence on the outcome.  In this regard, the court does not find merit in Plaintiff's argument that (1) she was prejudiced by the Magistrate Judge's factual recitation and (2) Defendant violated its "Employment & Transfers" hiring policy by considering Hudson's qualifications.  The court's sole concern at the pretext stage is whether "the reason for which the defendant [failed to promote] the plaintiff was discriminatory."  Hawkins v. Pepsi Co., 203 F.3d 274, 279-80 (4th Cir. 2000).  Based on the foregoing, the Magistrate Judge correctly found that Plaintiff has not produced sufficient evidence to meet her burden of proving that Defendant's asserted reasons for failing to promote her were a pretext for race discrimination.  Accordingly, Plaintiff's Title VII claim fails as a matter of law and summary judgment should be granted to Defendant on Plaintiff's cause of action for race discrimination.

2.    Plaintiff's Claim of Age Discrimination

Plaintiff alleges that Defendant unlawfully discriminated against her based upon her age by failing to hire her for positions that were ultimately filled by individuals substantially younger than Plaintiff.  The ADEA addresses age related employment issues by making it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . . ."  29 U.S.C. § 623(a)(1).  The prima facie case standard in a failure to promote context under the ADEA is the same as under Title VII.  See Martin v. Alumax of S.C., Inc., 380 F. Supp. 2d 723, 732 (D.S.C. 2005) (citing Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998)).  However, as the Magistrate Judge observed, Defendant is immune from an ADEA suit in federal court pursuant to the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. Const. art. XI.  The Supreme Court has consistently construed the Eleventh Amendment to bar suits against a state brought by its own citizens in federal court.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98 (1984).  The immunity from suit conferred by the Eleventh Amendment extends both to suits against the state itself, suits against state agencies and their governing body, officers, and agents, which function as an arm or alter ego of the state.  Pennhurst, supra, at 100; see also Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989); Alabama v. Pugh, 438 U.S. 781, 782 (1978); Hughes v. Blankenship, 672 F.2d 403, 406 (4th Cir. 1982); Jensen v. Conrad, 570 F.

11

Supp. 91, 96-97 (D.S.C. 1983); <u>Coffin v. S.C. Dep't of Soc. Servs.</u>, 562 F. Supp. 579, 584 (D.S.C. 1983); <u>United States v. South Carolina</u>, 445 F. Supp. 1094, 1100 (D.S.C. 1977). Eleventh Amendment immunity can be overcome if the state waives its constitutional immunity and consents to suit or, if Congress abrogates the state's immunity pursuant to its authority to enforce substantive provisions "by appropriate legislation." <u>See</u> U.S. Const. art. XIII, § 2; art. XIV, § 5; art. XV, § 2.

In its motion to dismiss, Defendant contends without opposition that it is an agent of the State of South Carolina for Eleventh Amendment purposes. (<u>See</u> ECF No. 20-1, pp. 5-6.) Moreover, the State of South Carolina has not waived its immunity regarding claims such as those asserted by the Plaintiff herein. <u>See</u> S.C. Code Ann. § 15-78-20(e) (expressly stating that the State of South Carolina does not waive sovereign immunity from suit in federal court). Plaintiff neither argued nor submitted evidence to support the position that the State of South Carolina has consented to this lawsuit. Congress further did not exercise its power to abrogate a state's Eleventh Amendment immunity in enacting the ADEA. <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 91 (2000). Thus, without consent to suit from the State of South Carolina or federal legislation abrogating the constitutional immunity of the State of South Carolina, Defendant is not subject to suit under the ADEA. Based on the foregoing, the Magistrate Judge correctly concluded that Defendant is the alter ego of the State of South Carolina for Eleventh Amendment purposes and is immune from suit under the ADEA. Accordingly, Defendant's motion to dismiss regarding Plaintiff's federal age claims should be granted.

3.    <u>Plaintiff's Claim for Retaliation in Violation of Title VII</u>

Plaintiff alleges that Defendant reduced her work hours to retaliate against her for complaining about discriminatory conduct to President Weeks and for filing a charge of

discrimination with the EEOC and SCHAC.   Upon her review, the Magistrate Judge recommended granting Defendant's motion for summary judgment regarding Plaintiff's retaliation claim.  The Magistrate Judge determined that Plaintiff was unable to establish a prima facie case of retaliation because she could not show that the reduction in her work hours in the last quarter of 2009 was causally connected to her complaints about unfair treatment or discriminatory hiring practices to company officials in March 2009 or the charge of discrimination she filed in September 2009.  (ECF No. 33, pp. 11-12.)  The Magistrate Judge further concluded that Plaintiff's retaliation claim ultimately fails because Plaintiff cannot identify any employee of Defendant who was both responsible for reducing Plaintiff's hours and aware that Plaintiff had engaged in any protected activity.  (Id. at 11 (citing  Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007)).)

In her objections to the Magistrate Judge's recommendation, Plaintiff contends that the Magistrate Judge erred in rejecting her retaliation claim because Plaintiff's complaints of unfair and discriminatory treatment in combination with the reduction of her work hours provide enough "circumstantial evidence sufficient to allow a jury to determine causation."  (ECF No. 34, pp. 7-9.)  As a result, Plaintiff asserts that there is evidence upon which a reasonable jury could find that she was retaliated against in violation of Title VII.  (Id. at p. 9.)  The court disagrees.

To demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action."  See Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997).  Clearly, Plaintiff engaged in protected activity when she complained about allegedly

discriminatory treatment to Defendant's President and her immediate supervisor and then filed a charge of discrimination charge with the SCHAC and the EEOC.  See, e.g., Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 551 (4th Cir. 1999) ("As long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under § 704's opposition clause."); Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) ("Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (filing a complaint with the EEOC is a protected activity).  Moreover, there is evidence from which to conclude that the reduction in Plaintiff's hours was an adverse employment action.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (test is if "a reasonable employee would have found the challenged action materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination").  Therefore, to establish a prima facie case of retaliation, Plaintiff only needs evidence to support the conclusion that her employer must have taken the adverse employment action because Plaintiff engaged in a protected activity.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

Upon review of the evidence, the Magistrate Judge correctly concluded that Plaintiff cannot establish a prima facie case of retaliation.  Plaintiff failed to submit evidence, and did not attempt to argue, that any of Plaintiff's supervisors in direct charge of her work schedule were aware or had knowledge that Plaintiff had engaged in protected activity.  The employer's knowledge that a plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case of retaliation.  Dowe v. Total Action Against Poverty in

Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).  Based upon the foregoing, Plaintiff's

objection to the Report and Recommendation is without merit and summary judgment should be

granted to Defendant on Plaintiff's claim for retaliation.

        4.      Plaintiff's State Law Breach of Contract Claim

In addition to her federal claims, Plaintiff also alleges that Defendant breached their

contractual relationship when Defendant reduced her work hours after she filed a charge of

discrimination with the EEOC and the SCHAC.  The Magistrate Judge recommended granting

Defendant's motion to dismiss Plaintiff's breach of contract claim after finding that Defendant

was entitled to Eleventh Amendment immunity.  Plaintiff did not assert an objection to the

Magistrate Judge's recommendation of dismissal.  Accordingly, because it is uncontroverted that

Defendant is immune from suit in federal court for breach of contract, the court must grant

Defendant's motion to dismiss regarding Plaintiff's state law claim for breach of contract.

## III.   CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Defendant's

motion to dismiss Plaintiff's claims for age discrimination in violation of the ADEA and breach

of contract.  The court further **GRANTS** Defendant's motion for summary judgment with

respect to Plaintiff's claims for race discrimination in violation of Title VII and retaliation in

violation of Title VII and/or the ADEA.  The court adopts the Magistrate Judge's Report and

Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED**.

                /s/Margaret B. Seymour           
                MARGARET B. SEYMOUR
                CHIEF UNITED STATES DISTRICT JUDGE

August 27, 2012
Columbia, South Carolina